VICTORIA BRUGUIER v. ALFRED PEPIN, Appellant.

**Cancellation:** FRAUD: *Evidence.* Plaintiff was seventy years of age, the owner in her own right of a farm worth about twenty thousand dollars, upon which there was an incumbrance of four thousand dollars and corn worth about one thousand three hundred dollars. Plaintiff was greatly affected by the death of her husband, her actions at times indicating much mental distress. After the filing of her husband's will she received notice from defendant that a daughter of decedent by an Indian wife intended to contest it. Two days thereafter she met the defendant, in whom she placed great confidence, who told her the children would give her trouble, and proposed that he purchase the farm in order to avoid it, and plaintiff executed a deed of the farm and a bill of sale of the corn to defendant, and he executed an undertaking to pay her six hundred dollars a year during her life, a note for five thousand dollars payable five years after date without interest, a note for six hundred dollars and a mortgage on part of the farm to secure the payments. On the day the papers were executed plaintiff

threatened to commit suicide, and stated to a friend that defendant had taken the corn from her, and was anxious to know if the papers were all right. She did not sleep that night and was so ill the next day that a physician and priest were called to attend her,. and for some days she remained in an unnatural condition. Defendant claimed that the transaction was *bona fide*, and that the papers were read over and explained to her and that he informed plaintiff that the will contest would not affect her farm. He also claimed that the corn was purchased in consideration of the six hundred dollar note and a claim for services rendered: plaintiff amounting to nine hundred and twenty-five dollars. Defendant's claim for services was largely ficticious. Plaintiff offered to return a certificate of deposit for six hundred dollars. which defendant delivered to her in payment of his note, a day or two after it was given. *Held*, that a decree cancelling the deed of the farm and the bill of sale of the corn, and requiring defendant to execute a reconveyance of the land, would not be disturbed..

*Appeal from Woodbury District Court.*—Hon. GEORGE W.. WAKEFIELD, Judge.

TUESDAY, OCTOBER 18, 1898.

ACTION in equity for the cancellation of certain instruments in writing which purport to convey real and personal property to the defendant, to enjoin him from exercising acts of ownership over the property, and for general. equitable relief. There was a hearing on the merits, and a decree for the plaintiff. The defendant appeals.—*Affirmed.*

*C. A. Irwin* for appellant.

*O. C. Treadway* for appellee.

ROBINSON, J.—The plaintiff is the widow of Theophile Bruguier, who died testate on the eighteenth day of February, 1896. His will gave to the plaintiff all of the property of the decedent, and that included a quantity of corn which is in controversy. For many years the plaintiff had owned a farm of four hundred and thirty-eight acres in Woodbury county,. but it had been managed by her husband, and upon him she had relied for counsel and assistance. The defendant was.

engaged in the real estate and loan business in Salix, a town near the farm, and had frequently assisted Bruguier in his business transactions, and was esteemed by him. After his death, the plaintiff, having confidence in the defendant, asked him to assist her in the business of her late husband's estate. A few days after his death his will was filed for probate. At that time the plaintiff was seventy years of age. Her educational advantages had been few. She spoke the French language, and was able to read English print, but was not able to write or read writing in that language. She married Rouville Brunnette when quite young, and spent several years on the plains and at western army posts. In the year 1857 she went to Sioux City, and since that time has resided near that place. About the year 1860 she married Bruguier, and lived with him as his wife until his death, but had no children. Before he met her he had married two or more Indian women, by whom he had had several children. After the will was filed as stated, a daughter of the decedent by an Indian wife gave notice of an intention to contest the will, and the plaintiff was informed of that fact by the defendant on or about the twenty-eighth day of March, 1896. On the thirtieth day of that month she started from her home on the farm to go to Sioux City, and stopped at the defendant's house in Salix, to await the train, and there met the defendant. Her testimony of what occurred is substantially as follows: The defendant had a copy of the notice that the will would be contested, and read it to her twice. He told her that the children of the decedent would give her trouble, and proposed to purchase the farm of her. In payment, he offered to assume a mortgage of four thousand dollars, with which it was incumbered, pay her five thousand dollars, and six hundred dollars annually during her lifetime. He told her that by selling the farm she would avoid the trouble which was threatened, but she did not say much in response to his offer. However, they went to Sioux City together, and visited the office of an attorney, to whom the defendant gave directions

respecting the drawing of papers. In the afternoon they again visited the attorney, and the papers he had drawn were signed. They included a deed from the plaintiff to the defendant for her farm, and a bill of sale for the corn; an undertaking of the defendant to pay to the plaintiff during the remainder of her natural life the sum of six hundred dollars a year; a promissory note for the sum of five thousand dollars, payable five years after its date, without interest; a promissory note for six hundred dollars, and a mortgage on a part of the farm to secure the payments to be made to the plaintiff during the term of her natural life and the five thousand dollar note. The plaintiff claims that she did not know until that time that the corn was to be included in the transaction, but that the defendant said, in effect, that he must have it "to fight the Indians with,"—meaning the children of the decedent. The plaintiff also claims that she did not comprehend that transaction, but, on returning with the defendant to his home that evening, she heard him say to his wife: "Old woman, I made a good day. I made a clean sweep out of everything,—the land, the corn, the notes, and horse and buggy, and even the featherbed." The plaintiff states that the defendant did not know she heard the remark; that she was "nearly confounded" by it, and did not know what she was doing. It appears that the defendant had, prior to that time, managed a sale of personal property which belonged to the estate of the decedent, and held the notes and other proceeds therefrom to the amount of about one thousand two hundred and forty dollars, and that proceedings in court were afterwards required to compel him to surrender them to the representatives of the estate.

The defendant contends that the transaction was in good faith on his part; that it was first proposed by the plaintiff; that he told her repeatedly that the contesting of the will would not affect her right to the farm; that before the papers were signed they were fully explained to her, and that she understood them; that there were but eight thousand six hundred and

eighty-six bushels of corn, which were worth but thirteen cents
per bushel, or one thousand one hundred and twenty-nine
dollars and eighteen cents in all; and that he paid for it by
giving his note for six hundred dollars, as stated, and by
satisfying claims he held against the plaintiff to the amount
of nine hundred and twenty-five dollars. The district court
canceled the deed for the farm, and the bill of sale of the
corn, and required the defendant to execute to the plaintiff
a re-conveyance of the land.

There is much in the record which tends to sustain the
claims of the defendant, and so much conflict in the evidence
respecting essential facts that a conclusion entirely free from
doubt cannot be reached. But we are of the opinion that
the preponderance of the evidence establishes the following:
The plaintiff was warmly attached to her late husband, and
was greatly affected by his death, at times wandering from her
home, and into the fields, at such times and in such manner
as to indicate much mental distress. She was unable to sleep
well after his death, and sometimes did not retire to bed at
night, but walked the floor. She manifested excessive grief,
talking much of her deceased husband, and weeping, at times
expressing a wish to die, and even threatening to take her own
life. She was also much troubled about her business affairs.
Her farm was worth not less than twenty thousand dollars,
and its annual rental value was not less than one thousand
five hundred dollars. There were not less than ten thousand
bushels of corn, worth not less than one thousand three hun-
dred dollars. The total value of the property which she con-
veyed to the defendant, after deducting therefrom the
incumbrance of four thousand dollars on the farm, which the
writings did not require him to pay, was more than seven-
teen thousand dollars. The expectancy of life of a person of
her age was eight and a half years, and the cash value of the
annuity which the defendant agreed to pay her was but three
thousand five hundred and thirty-seven dollars and sixty

cents. His claims for services rendered were largely fictitious, and it is at least doubtful if he was entitled to one hundred dollars therefor. The present worth of the five thousand dollar note was less than four thousand dollars. Hence it appears that for property worth more than seventeen thousand dollars the defendant was to give but about eight thousand dollars in value. On the day the papers were drawn the plaintiff was weak, nervous, and excitable, and her conduct was such as to alarm an old friend, with whom she stopped for an hour or more. At that time she spoke about the corn, said the defendant had taken it from her, and was anxious to know that the papers were right. She was despondent, and threatened to commit suicide. She returned to her home, but did not sleep that night, and the next day was so ill that a physician and a priest were called to attend her, and for some days thereafter she was in an unnatural condition. We are satisfied that when the papers in question were executed she did not comprehend what was done nor understand fully her rights; that she was not competent to act for herself in so important a transaction; and that the defendant knew that fact, and took advantage of her condition and her confidence in him to induce her to make the conveyances in question. That the transaction was contrary to her interests and prejudicial to her is clear, and that the defendant's part in it was wrongful is shown by the evidence, including his own declarations to disinterested persons. The plaintiff offers to return to him a certificate of deposit for six hundred dollars which he delivered to her in payment of his note a day or two after it was given, and that is all she has received from him. We are satisfied that the decree of the district court does substantial justice, and it is AFFIRMED.